UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| LADELLA MAE FRANCE | ) | |
| | ) | |
| V. | ) | NO. 2:13-CV-198 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security | ) | |

## REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. The plaintiff brought this action for judicial review following the administrative denial of her applications for disability insurance benefits and supplemental security income by an Administrative Law Judge ["ALJ"]. The plaintiff has filed a Motion for Judgment on the Pleadings [Doc. 14], and the defendant Commissioner has filed a Motion for Summary Judgment [Doc. 16].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues

differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

The plaintiff was 40 years of age on her alleged disability onset date of March 30, 2006, and 46 at the time of her administrative hearing in 2012, a "younger" individual under the Social Security regulations. She had past relevant work experience as a machine operator assistant, classified as medium and unskilled by the vocational expert ["VE"]; janitor, classified as medium and unskilled; maintenance worker, classified as medium and semi-skilled; and as a sitter/caregiver, classified as light and unskilled. (Tr. 43). She has 8 years of schooling with a GED.

The plaintiff's medical history is described in her brief as follows:

> The ALJ properly found the claimant had a severe back and shoulder disorder. (TR 11) MRi of the back on 12/8/2005 indicated moderately prominent relatively focal disc herniation on the right with impression on the adjacent spinal cord. (TR 280)
> Medical records from Appalachian Orthopedics of 6/10/2008 indicate MRI imaging showing labral SLAP tear type lesions with some tendonitis in the right shoulder. Physical examination revealed pain with active forward flexion past 90 degrees and with internal/external rotation of her shoulder. She had a tender AC joint with 4/5 strength in the right shoulder compared to the left. (TR 212-213)
> ER records from Mountain States Health Alliance on 3/3/2010 indicate the claimant was seen for diabetes and inflamed hemmoroids which indicated she was in mild to severe pain. (TR 229) Her blood sugars were up due to lack of medication for 3 weeks and she was placed on an insulin pump. (TR 230) On 3/15/2010 ER records indicate the claimant was see with severe abdominal pain and vomiting and a hypoglycemic episode. (TR 219) Her glucose level was 500. (TR 223)
> The record contains several records from Dr. S. Krishnamoorthy indicating treatment for her diabetes and depression. The record of 4/15/2010 states she is feeling weak with trouble sleeping due to blood sugar issues. His notes reflect peripheral

neuropathy, stiffness and light headed. (TR 265) She was placed on a sliding scale for insulin therapy. (TR 265) Her blood work on 4/19/2010 showed glucose level at 313, alkaline phosphates at 145 with an A1C of 12.4 (TR 271-72) A recheck on 4/23/2010 indicated her glucose level had went down to 138 but alkaline phosphates remained high at 138. (TR 269). Again on 5/28/2010 her A1C level was at 10.2 and glucose was at 164 with alkaline phosphates slightly lower at 122. (TR 267-68) The claimant complained on 5/25/2010 of experiencing "pain killing her" extending from her shoulder. (TR 260) She was referred to a pain clinic for follow-up. (TR 261, 332) His record of 8/16/2010 indicates he was continuing to follow-up with her diabetic treatment. (TR 332) On 11/3/2010 he reported an increase in blood pressure, weight gain of 10 lbs. and bursitis in her left elbow. (TR 330) On 12/1/2010 the doctor reported her blood sugars were running from 60 to 160 and diagnosed epicondylitis. (TR 328)

    The claimant was referred to the Kingsport Pain Clinic by Dr. Kristhnamoorthy and the claimant began treatment on 9/28/2010. Records provided show continues treatment at the clinic from 9/28/2010 through 12/21/2011 and none of these records were reviewed by any state agency physician. An electrodiagnostic report dated 8/4/2010 indicates she had very severe pathology at the Left S1 sural nerve with mild on the right at L2, left L6 and right S1. (TR 346) The claimant reported problems in her thoracic and lumbar areas (L/T), bilateral legs and left shoulder. She described it as intermediate aching, throbbing and tingling worse when walking and sitting. She described the pain as 9/10. (TR 344) She only received 10% improvement for about a week after receiving an injection. His physical exam revealed cervical and lumbar tenderness with guarded ROM. (TR 344) His diagnosis was pirifornis syndrome, cervicalgia, lumbago and herniated T11-T12 and shoulder. (TR 345) He prescribed roxicodone for pain. (TR 345)

    The Claimant was seen on 11/23/2010 again for the same diagnosis of lumbago, cervicalgia, and disk herniation. (TR 342) Claimant indicated she was having worse thoracic pain over the past month with pain in both arms. Her pain level was 9/10. She indicated the injections provided a 75% improvement for 3 days. Physical exam revealed tenderness in the thoracic area with limited ROM. (TR 341) Claimant was again seen on 12/21/2010 complaining of thoracic pain worsening which increased with movement. Her pain level was reported at that time at 10/10. She reported 40% improvement with pain for 2 weeks from the last injections. (TR 380) Physical exam revealed thoracic paraspinal tenderness and guarded ROM. (TR 380) X-ray of 12/17/2013 was normal with limited range of motion of the neck area. (TR 340)

    On 1/18/2011 the claimant again returned to the pain clinic complaining her lumbar and thoracic areas had been worse over the last 4 days with intermittent aching/gnawing pain increased when standing and walking. Her pain level was 9/10. (TR 375) She reported pain relief of 60% for 1 and ½ weeks after the last injection of 12/21/2010. (TR 375) Physical exam revealed paraspinal tenderness and guarded ROM. (TR 375) She reported 70% improvement with the injections over a two week period but she was having worse low back pain over the preceding week. She reported that any continuous activity caused burning and gnawing pain with her present pain level at 10/10. Physical exam revealed lumbar paraspinal tenderness and guarded ROM. (TR 370) An MRI was performed on 1/19/2011 which showed a "very large focal disc protrusion in a right paracentral location at the level of the T11-T12 disc spaces with severe rightward exiting nerve root encroachment and mild central canal stenosis." (TR

3

398)

An electrodiagnostic study was performed on 1/17/2011 indicating very severe findings at right C5 in the axillary nerve, bilateral C6 radial nerve lateral branch, bilateral C7 radial nerve medial branch, bilateral C8 ulnar nerve, right T1 first thoracic nerve and moderate right T2 second thoracic nerve. (TR 431)

The claimant returned on 2/28/2011 due to increased low back pain for past 2 days that increased with walking and standing, her pain was 8/10. (TR 365) She reported only 4 days of 70% pain improvement from the previous injections. (TR 365) Again physical exam revealed lumbar paraspinal tenderness and guarded ROM. (TR 365) The doctor reported a diagnosis of lumbar bulge at L5-S1. (TR 366)

The claimant returned on 3/23/2011 for follow-up reporting her lumbar and thoracic pain had increased over the last five days and worsened with increased movement. On this occasion she reported cramps and spasms were worse in her legs. (TR 358) She reported 50% improvement in pain since her last visit that lasted one week. (TR 358) On exam she was positive for "spasms". (TR 358) On physical exam she again showed tenderness of the thoracic and lumbar paraspinals and guarded ROM. (TR 358)

On 4/20/2011 piriformis syndrome was indicated and bilateral muscle injections were performed. (TR 350-51) Claimant reported that the muscles in her legs were drawing up with pain at a 7 to 9 level.(TR 356) She reported pain was progressing into her legs and had been worse over the last week. (TR 354) A diagnosis of enthesopathy of the hip regions was made and the claimant received further injection therapy. Claimant returned n 9/26/2011 with the same issues with increased pain with sitting. She reported 70% improvement with pain for about a week. Exam revealed cervical and lumbar paraspinal tenderness and guarded ROM. (TR 406) At the 10/24/2011 visit the claimant indicated increasing low back pain when sitting and that she had about 70% pain improvement for 4 days after the last injection. Again physical exam revealed lumbar paraspinal tenderness and guarded ROM. (TR 413) At the 11/28/2011 visit the claimant reported again worsening pain with sitting and a pain level of 8/10. (TR 419) She reported receiving 50% pain improvement for one week after the last injection. (TR 419) Physical exam revealed lumbar paraspinal tenderness and guarded ROM. (TR 419) The last visit reported in the record was on 12/21/2011. The claimant reported increasing low back pain with increased activity, 50% improvement of pain for one week after the last injection. Again physical exam revealed lumbar paraspinal tenderness and guarded ROM. (TR 424) The claimant reported on her questionnaire of having pain levels from 6 to 9 and that everything she was doing made the pain worse. (TR 426)

Medical records from ETSU Family Physicians of Kingsport indicate the claimant reported to the clinic seeking a new PCP due to Dr. Krishnamoorthy retiring. She reported with a skin abscess in her left leg, edema and obesity as diagnosis. (TR 390) Blood work from 9/12/2011 indicated an A1C level of 9.3 confirming the active diabetes mellitus. (TR 392) Her glucose was at 212. (TR 392)

[Doc. 15, pgs. 2-7].

The medical assessments are summarized by the plaintiff as follows:

A consultative examination was performed by Dr. Samuel Breeding on

4

8/23/2010. The claimant reported to Dr. Breeding that she suffered from low back pain, arthritis, depression and diabetes. She reported getting blurred vision when her sugar gets too high and experiencing numbness in the bottom of her feet. Her physical exam revealed slightly guarded range of motion of her shoulders bilaterally; guarded range of motion of her hips; and lumbar flexion normal but guarded when at 60 degrees. All other movements were normal. He opined the claimant would be limited to lifting 15 lbs. occasionally, she could sit four to six hours and stand four to six hours in an eight hour day. (TR 294-95) IT IS IMPORTANT TO NOTE DR. BREEDING DID NOT REPORT HAVING SEEN ANY MRI'S OF HER SHOULDER OR IMAGING STUDIES OF HER BACK. (Emphasis in original).

A Physical Residual Functional Capacity Assessment was reported on 9/25/2010 from Reeta Misra, M.D. for the administration. She opined the claimant could lift 50 lbs. occasionally and 20 lbs. regularly with sitting and standing at 6 hours out of an 8 hour day. (TR 319) She further stated that she would be limited bilaterally from reaching frequently. (TR 321) She stated the CE of Dr. Breeding was overly restrictive and not supported by an exam with normal ROM normal Strength and normal gait and as a result she gives it no weight. (TR 324) **She only indicates reviewing records from 5/15/2008 to 8/23/2010 and briefly mentioned the 6/8/07 ALJ decision and the 11/05 MRI indicating T11-T12 disc hernition.** She states new and material MER documents a significant change in the physical condition w/tk for UM and MRI of rt/lt shoulder showing SLAP tears. (TR 325) There is no mention of the diabetes mellitus, complications with it or any indication of any of the correct physical findings mentioned by Dr. Breeding. (Emphasis in original).

A mental health examination was performed on 9/6/2010 by Christopher Beckett on behalf of the administration. He indicates in the first paragraph that the claimant appeared older than her chronological age. The claimant reported having anxiety, herniated disc in her back, arthritis in both shoulders and hips, elbows and hands. She said her nerves were getting bad with the pain and that sometimes it was three or four days before she would get any relief. (TR 287) She reported the diabetes and beginning to attend a pain clinic. (TR 288) The report mentions the claimant walked with a moderate limp. (TR 289) The examine opined the claimant would have mild general adaptation skill limitations and mild difficulty adapting to change and mild difficulty dealing with stress. (TR 290)

Dr. Steve J. Baumrucker performed an independent medical examination of the claimant and reviewed all of the claimant's medical records and tests through the date of his report of January 19, 2012. (TR 441) He reported the claimant had difficulty with activities of daily living including clearing, dishwashing, etc… She stated she could not brush her hair with her right arm. Her pain has been so severe she has been in bed for several days. (TR 439) His physical exam revealed tenderness in the cervical paraspinal region with full range of motion of the lower-mid thoracic spine with bilateral muscle spasms. She had decreased ROM on forward flexion by approximately 50%, shoulder abduction was at 90 degrees with tenderness posteriorly over supraspinatus. (TR 440) She had a depressed affect and decreased grip. Hypesthesia over C7 dermatome on right. (TR 440) His diagnosis was cervical radiculopathy, per nerve conduction study; spinal arthritis, chronic; thoracic radiculopathy; T11- T12 right sided nerve root encroachment, diabetes mellitus type II, SLAP tear of right shoulder and depression. (TR 440) Dr.

5

Baumrucker opined that claimant could lift no more than 10 lbs. and that infrequently (similar to Dr. Breeding's 15 lbs.), she could stand up for 5 minutes but can walk for 10 minutes and must lie down or sit down after this activity. (TR 441) She can sit for 30 minutes at a time before changing position. She would have difficulty stooping, climbing, standing and sitting. (TR 441) He further opined he didn't feel she was employable with her multiple limitations and she would be unable to perform full time work at any level of exertion. (TR 440)

[Doc. 15, pgs. 7-9].

At the administrative hearing, the ALJ took the testimony of Cathy D. Sanders, the VE. He asked her to vocationally describe the plaintiff's past relevant work, which she did as summarized above. He then asked her a hypothetical question whether jobs existed based upon her age, past relevant work experience, and educational characteristics with "the exertional limitations set forth in Exhibit B9F,..." which was the opinion of Dr. Misra that she could perform medium work with a limit on bilateral overhead reaching of "frequent." Ms. Sanders identified the jobs of diswasher, cashier, and food preparation worker. [Tr. 44]. If plaintiff were limited to the extent opined by Dr. Baumrucker, or as plaintiff herself testified, there would be no jobs.

In his hearing decision, the ALJ found that the plaintiff had severe impairments of a back disorder, a shoulder disorder and an adjustment disorder. (Tr. 11). He then discussed the medical evidence. (Tr. 11-14).

He then found the plaintiff's residual functional capacity ["RFC"]. He found she had the RFC "to perform medium work as defined in 20 CFR 404.1567(c0 and 416.967(c)[1]

---

[1]These regulations define medium work as requiring "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." It is accurately described in the RFC assessment of State Agency physician Misra as requiring a person at this level of exertion to carry 50 pounds up to one-third of the work day and 25 pounds up to two-thirds of the work day. (Tr. 319).

6

except not requiring more than frequent overhead reaching." He also found she was able to understand and carry out simple and detailed instructions, sustain concentration and persistence, adapt, and relate to peers/supervisors, with infrequent interaction with the public. While the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;...the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." In opining on plaintiff's credibility, the ALJ found that she "does not have a medically determinable impairment which would be expected to result in restrictions in the performance of medium work." He based this in part on her reported daily activities, which he stated included "using a computer daily, cooking, doing some grocery shopping, attending church, helping her mother, and caring for her own personal needs..." He stated tht the plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual." He noted she continued to work after her back pain began in October 2005, until her disability onset date of March 30, 2006, and deduced from her efforts that "the fact that the impairment(s) did not prevent the claimant from working at that time strongly suggests that it would not currently prevent work." Thus, he found her allegations were "not credible or supported by the documentary evidence." (Tr. 16-17).

In evaluating the opinion evidence, he found the opinions of the State Agency physicians "to be most consistent with the overall objective evidence of record." He found Dr. Breeding's assessment "too restrictive and not supported by the exam." As for Dr. Baumrucker, the ALJ stated it "contrasts sharply with the other evidence of record, which

7

renders it less persuasive." He also discounted it because plaintiff's attorney arranged the examination and because "the doctor was presumably paid for the report" while stating that while "such evidence is legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored." From all of this, he concluded that the plaintiff, although limited, could "perform at least some type of work activity and, in this case, work of a medium exertional level." (Tr. 17-18).

He found that plaintiff, with the RFC he found, could return to her past relevant work as a janitor, maintenance worker, machine operator assistant, and sitter/caregiver. He made this finding "based on credible vocational expert testimony [that] these jobs ranged from light to medium physical exertion." He stated she could do this because she "retains the residual functional capacity for medium exertion with no more than frequent overhead reaching bilaterally." (Tr. 18).

Alternatively, he also found at "step five" of the sequential evaluation process that, with the RFC he had found, plaintiff could perform a significant number of jobs in the national economy, as identified by the VE. (Tr. 19). Accordingly, he found that the plaintiff was not disabled. (Tr. 20).

The plaintiff first asserts that the ALJ erred in relying upon the opinion of the State Agency physicians while giving inadequate consideration to report of Dr. Baumrucker. She also argues that the ALJ erred in his consideration of her credibility.

There is no doubt that the opinion of a State Agency physician or psychologist can be given greater weight by the ALJ than the opinions of consultative examiners or even treating physicians in certain circumstances. *See, Ealy v. Commissioner of Soc. Sec.* 594 F.3d 504

(6th Cir. 2010), and *Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640 (6th Cir. 2006). Such an opinion can provide substantial evidence for an ALJ's RFC finding and a finding based upon VE testimony that a substantial number of jobs exist which a given plaintiff can perform. However, the evidentiary weight to be given to *any* medical assessment from *any* source must be based upon the support that particular assessment has in the medical evidence in the record. Obviously, a non-examining physician has no frame of reference other than the medical reports and tests, and must establish the veracity of their opinions based upon their thorough and logical consideration of that evidence. They themselves have not taken a claimant's pulse, rotated a claimant's shoulder, listened to them breathe, felt or viewed a muscle spasm, or tested their grip strength. They must rely on the reports of those who have. And as stated, if they do so, their assessments are entitled to very great weight, even over the poorly supported opinions of examining and even treating doctors.

The defendant, quite understandably, argues that there is substantial evidence that plaintiff is not "as limited as she claimed or Dr. Baumrucker opined." That much is clear. Dr. Baumrucker's assessment puts plaintiff in a near invalid state. However, the issue is not whether there is substantial evidence that she is capable of doing more than Dr. Baumrucker opined, but rather what her RFC is based upon the entire record.

In the Court's mind, there are difficulties with the State Agency opinion of a great range of medium work. Various factors stand out. First, the plaintiff is on prescribed opioids for the pain. Second, the M.R.I. study showed severe nerve root impingement at T11-T12 from the large focal disc protrusion. Third, the treatment notes from the Pain Center of Kingsport, while showing muscle strength within normal limits, also showed observable

9

muscle spasms on March 23, 2011, as well as consistent guarded range of motion. Fourth, the records of the Pain Center were not reviewed by the State Agency doctors.

In a great many cases, records submitted after State Agency review are of no practical consequence, and do not serve as the basis for a remand. This is not the case here. Logic and experience would dictate that there are a substantial number of jobs the plaintiff could perform which would *not* require being able to lift 50 pounds for 2.66 hours a day, and 25 pounds for 5.33 hours a day. But that is the RFC according to the State Agency and the Commissioner as things stand now. It is based entirely upon Dr. Misra's opinion who reviewed records which did not include the fact plaintiff was on prescribed opioid analgesics, had a severely impinged nerve root, continuing treatment at the Pain Center, and observed muscle spasms.[2] There could well be jobs the plaintiff could do at lower levels of exertion, but it simply defies common sense that the plaintiff could meet the lifting requirements of medium work. Before taking issue with this conclusion, anyone who disagrees is invited to lift a 50 pound bag of something for a third of a work day, or even a tenth of a work day, and then contemplate doing it day in and day out.

The Court is unable, with the present record, to opine one way or the other on the ALJ's determination of plaintiff's lack of credibility. But the Court does not believe that Dr. Misra's opinion constitutes substantial evidence, or that the Commissioner's position in this case is substantially justified.

Accordingly, the Court respectfully recommends that the case be remanded to the

---

[2]While a guarded range of motion can perhaps be "faked," how does one fake a muscle spasm in the presence of a trained orthopedic physician?

10

Case 2:13-cv-00198-JRG-DHI   Document 18   Filed 07/07/14   Page 10 of 11   PageID #: 542

Commissioner for further consideration of the plaintiff's physical RFC, including any further examinations and vocational testimony that may be necessary. It is further recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 14] be GRANTED and the defendant Commissioner's Motion for Summary Judgment [Doc. 16] be DENIED.[3]

Respectfully submitted,

    s/ Dennis H. Inman
United States Magistrate Judge

---

[3] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).